United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br>KIMMARIE T. NIELSEN,<br><br>　　　　　　　　　　Debtor. | Chapter 7<br>Bankruptcy No. 17 BK 17860<br>Honorable Judge Jack B. Schmetterer |
| JOEL F. HANDLER,<br><br>　　　　　　　　　　Plaintiff<br>v.<br>KIMMARIE T. NIELSEN,<br>　　　　　　　　　　Defendant. | Adversary No. 17 AP 00471 |

## OPINION ON DEFENDANT'S MOTION TO DISMISS ADVERSARY COMPLAINT [DKT. NO. 17]

Defendant-Debtor Kimmarie T. Nielsen ("Defendant" or "Nielsen") moves to dismiss the complaint filed by Plaintiff Joel F. Handler ("Plaintiff" or "Handler") pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b).

For the reasons discussed below, Defendant's Motion to Dismiss will be granted by separate order to follow.

## PLEADINGS

The debt in question is a money judgment based upon legal fees, in the amount of $32,822.19, accrued by Plaintiff during his representation of Defendant in her divorce case in the Cook County Circuit Court, Domestic Relations Division, Case No. 00 D 2613, pursuant to the July 25, 2011, engagement agreement between Plaintiff and Defendant. Defendant paid a $3,500.00 retainer and agreed to pay $425.00 per hour plus Plaintiff's costs. After making some payments between July 25, 2011 and October of 2011, she was unable to keep up with the payments agreed to and ceased making payments October 2011.

On January 3, 2012, Plaintiff sent a letter to Defendant indicating that he had not received payment over the previous two months. Defendant wrote back on January 5, 2012, stating that "the best" she would be able to pay Plaintiff would be $50.00 per month until she started receiving money from her ex-husband. Defendant indicated that she was only receiving $500.00 per month in child support at the time, and had to pay for her children's food, college expenses and medical insurance, on top of potentially losing her home.

Despite that email exchange with Defendant which indicated her financial instability and inability to pay, Plaintiff alleges that he continued to provide legal services to her through May 17, 2013. It is unclear how much work Plaintiff performed between January 2012 and May 2013, or of what nature the work was (Plaintiff attaches only two bills to his complaint, one showing expenses for December 2012 and another showing photocopying and postage expenses of December 31, 2013). On May 17, 2013, Plaintiff sent Defendant a letter requesting payment of his fees, including expenses incurred through April 2013. At some unspecified date subsequent to that letter, Defendant allegedly contacted Plaintiff indicating that she had sent a check for $50.00 that he should receive shortly. Plaintiff alleges that no such check was ever received.

Plaintiff alleges that despite the fact he never received the promised check after the May 2013 exchange, he continued to perform legal services for the Debtor through December 31, 2013. It is unclear what type of work Plaintiff performed and how much of it he did. The only bill from this period attached to Plaintiff's complaint shows that he incurred approximately $5.00 in copying and postage expenses. On January 2, 2014, Plaintiff sent Defendant a bill for his services, once again inquiring as to when he would be paid. By this point, Plaintiff had performed nearly $31,000.00 worth of work (Dkt. No. 13, Exh. E). Defendant replied by email stating that she understood that he could not work without getting paid, but that she had been surviving solely off of the minimal child support payments and her credit cards, which were by that point maxed out. While Defendant did ask for patience because of an anticipated settlement with her ex-husband, she also stated that if Plaintiff could not continue to represent her, she would understand.

Plaintiff pleads in his complaint that the January 2014, exchange caused him to continue his representation of Defendant through March 14, 2014. On March 14, 2014, Plaintiff sent a letter to Defendant once again requesting payment for the outstanding fees she owed him for his services. Plaintiff indicated in the letter that the parties had discussed payment on several occasions, but that, "nothing has been forthcoming." The letter also indicated that Plaintiff had accrued over $32,000.00 in legal fees and expenses. Plaintiff further stated that he would be willing to prepare a petition in state court for a rule to show cause against Defendant's ex-husband, indicating his willingness to continue working in some capacity on Defendant's case. On March 19, 2014, Defendant sent an email to Plaintiff indicating that she owned nothing and would not be able to pay the money she owed him for his services. She stated that she had paid

2

each time she was able and indicated that perhaps the amount she owed would not be so high if her case had not taken four years to near completion. In a second email from Defendant on March 19, 2014, Defendant stated that if she were to get some child support from her ex-husband in the near future, she would be able to pay Plaintiff $50.00. She reiterated that she understood if Plaintiff could not do any more work for her.

It is unclear when Plaintiff ceased performing work on Defendant's case. It is implied that Plaintiff continued to work on Defendant's case through at least March 14, 2014, based on the letter Plaintiff sent to Defendant indicating his willingness to prepare a petition for a rule to show cause against her ex-husband by April 17, 2014. Plaintiff also states in that March 2014 letter that Defendant owes "over $32,000.00" to him, which is close to the amount that Plaintiff states he is currently owed in his bankruptcy claim.

On March 28, 2014, Plaintiff filed a verified complaint in the Circuit Court of Cook County, Case No. 2014 M1 118564, suing Defendant for his attorneys' fees and costs associated with the legal services provided in Defendant's divorce. On August 19, 2016, the Circuit Court of Cook County entered an Order granting Judgment in favor of the Plaintiff and against the Defendant in the amount of $32,822.19.

Defendant filed her instant petition for Chapter 7 bankruptcy relief on June 12, 2017. Plaintiff filed the instant Adversary Complaint on September 11, 2017, seeking to determine the dischargeability of debt owed to him pursuant to 11 U.S.C. § 523(a)(2)(A). Defendant filed a Motion to Dismiss the first Adversary Complaint on October 9, 2017, arguing that the Plaintiff was barred by the doctrine of *res judicata* from pursuing his complaint against Defendant, and that any allegations of fraud should have been litigated in the previous Illinois state court case. On October 16, 2017, the Court denied Defendant's Motion to Dismiss the Adversary Proceeding. However, on that same date, the Court *sua sponte* dismissed Plaintiff's adversary complaint for failure to allege clearly facts warranting relief and gave him leave to file an amended complaint which would plead the alleged fraud with particularity.

Plaintiff filed his Amended Complaint on November 13, 2017, once again arguing that the debt owed to him is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Plaintiff states in the Amended Complaint that Defendant did not intend to pay him in full for the legal services he provided when she entered into the engagement agreement with him on July 25, 2011. Plaintiff details several instances of what he alleges constituted fraud or a scheme to defraud. First,

Plaintiff details the January 5, 2012 communication wherein Defendant stated that she would not be able to pay the full amount for his legal services because she had not then received any money from her ex-husband, but offered to pay $50.00 every month until she did. Plaintiff states that even though Defendant made this promise to pay at least $50.00 per month until she could afford to pay more, a promise upon which Plaintiff pleads he relied as a basis for continuing to perform legal work, she did not, in fact, make any payment of $50.00 or any other amount. Second, Plaintiff states that the May 17, 2013 communication, which precipitated the subsequent undated conversation wherein Defendant allegedly stated that a check was in the mail (though no such check was ever received), causing him to rely on the misrepresentation and continue to perform legal work for her. Third, Plaintiff alleges that the conversation on January 2, 2014, wherein Defendant stated that she would have great difficulty paying, but asking for patience on Plaintiff's part because of an anticipated settlement with Defendant's ex-husband, resulted in Plaintiff continuing to provide legal services in connection with Defendant's divorce case. Fourth, the March 14, 2014 and March 19, 2014 communications (wherein Defendant asserted that she would simply be unable to pay Plaintiff's full bill and once again offering to pay $50 per month as best as she could) was, Plaintiff argues, proof that Defendant never intended to pay for his services. As a result of these exchanges, Plaintiff continued to work on her case through March 14, 2014 and accrued $32,822.19 worth of legal fees. These representations about Defendant's intent, willingness, and ability to pay his fees and expenses, Plaintiff argues, are the basis for his contention that the entire debt is nondischargeable.

## MOTION TO DISMISS

On December 1, 2017, Defendant filed the instant Motion to Dismiss the Amended Adversary Complaint. Defendant argues, pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), that Plaintiff has failed to state a claim upon which relief may be granted. Defendant asserts that Plaintiff's allegations of fraud do not meet the pleading requirements of Fed. R. Civ. P. 12(b)(6), or the heightened pleading requirements of Rule 9(b) because he is pleading fraud. Defendant argues that Fed. R. Civ. P. 9(b)'s heightened pleading requirement, which requires that Plaintiff describe "with particularity the circumstances constituting fraud," is not met because the statements by Defendant upon which Plaintiff relies are mainly statements of future intent, which cannot form the basis of an action for fraud, citing *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 U.S. Dist. LEXIS 119575, at *15 (N.D. Ill. Aug. 23, 2012). Defendant

4

argues that she only made promises to do her best to pay Plaintiff what she could each month, merely indicating that $50.00 per month is what she could realistically afford given her unemployed status. Defendant further argues that, given Plaintiff's knowledge of her financial situation, relying on statements allegedly made by Defendant that a check had been mailed would be unreasonable. Defendant argues that she made it clear to Plaintiff in no uncertain terms that she did not have money to pay his fees and that if he needed to cease representing her, she would understand. Defendant states that at all relevant times, Plaintiff knew that she was in difficult financial straits and that any statements indicating future intent to pay came with the caveat that she would not necessarily be able to afford regular payments. Thus, Defendant argues, Plaintiff, as an experienced attorney, could not have justifiably relied upon Defendant's vague promises given her financial circumstances.

Plaintiff filed his Response on January 11, 2018. Plaintiff argues that he has plead sufficient facts to raise the possibility that he is entitled to relief, and thus, has met the liberal pleading standards of Rule 12(b)(6). Plaintiff further asserts that he has also met the heightened pleading standards of Rule 9(b), and that because he has plead adequately, the Motion to Dismiss must be denied and he must be allowed to offer evidence to support his claims at trial, citing *In re Glenn*, 542 B.R. 833, 838 (N.D. Ill. 2016). Plaintiff argues that Defendant's intent to commit fraud existed at the time the parties entered into an agreement, and that because her behavior was part of a scheme to defraud, her promises to pay constitute actionable promissory fraud. Further, Plaintiff asserts that his Amended Complaint satisfies the requirements for pleading the elements of fraud because he adequately detailed instances of misrepresentation on the part of Defendant, and argues once again that promissory fraud is actionable in this case because the pattern of deception practiced by Defendant became a scheme to defraud, citing *Advanced Ambulatory Surgical Center, Inc. v. Connecticut General Life Insurance Co.*, 261 F.Supp.3d 889, 898 (N.D. Ill. 2017) and *Ass'n Benefit Services v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007). Additionally, Plaintiff argues that he did justifiably rely on Defendant's statements because he did not blindly rely on misrepresentations that would have been obvious upon cursory examination. Though Defendant asserts that Plaintiff's pleadings lack particularity, especially with regards to the alleged phone call indicating that a check had been mailed, Plaintiff argues they are detailed enough to survive a motion to dismiss.

5

Defendant filed her Reply on January 25, 2018. Defendant once again reiterates that none of the statements attributable to her in conversations with Plaintiff were promises to pay, but rather statements indicating that she could only pay a fraction of what he was owed. Defendant reiterates her argument that as an experienced attorney, Plaintiff cannot say that he justifiably relied on Defendant's statements as evincing a promise to pay, given that he knew of her troubled financial circumstances. Furthermore, Defendant argues that the Plaintiff's exhibits contradict allegations made in his complaint. Specifically, Defendant argues that Plaintiff's Exhibit C did not constitute a promise that she would pay the full amount in $50.00 monthly installments, but would attempt to pay what she could, the alleged $50.00 per month amountf being "the best" that she could do in her financial situation. Thus, Defendant argues, the exhibit should control, citing *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). Defendant also reiterates her argument that none of the alleged instances of fraud plead by the Plaintiff actually show that Defendant had engaged in a scheme to defraud him, and thus, his assertion that promissory estoppel is actionable is incorrect.

## JURISDICTION AND VENUE

Subject matter jurisdiction lies under 28 U.S.C. § 1334. Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer cases arising under title 11 to a bankruptcy judge under 28 U.S.C. § 157, and this matter is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I).

## DISCUSSION

The general standard for pleadings, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable in bankruptcy by Fed. R. Bankr. P. 7012, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). When pleading fraud, however, the pleading standard is controlled by Fed. R. Civ. P. 9(b), made applicable in bankruptcy by Fed. R. Bankr. P. 7009. In relevant part, Rule 9(b) states that:

> (b) FRAUD OR MISTAKE; CONDITIONS OF MIND. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

The Seventh Circuit Court of Appeals has held under the heightened pleading requirements of Fed. R. Civ. P. 9(b) that plaintiffs must, "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting 2 James Wm. Moore et al., *Moore's Federal Practice* § 9.03(1)(b), at 9-22 (3d ed. 2015)). Substantiation requires the plaintiff to plead the circumstances surrounding the alleged fraud, including the who, what, when where and how of the fraudulent acts. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990). A heightened pleading standard is needed due to the "stigmatic injury that potentially results from allegations of fraud." *Presser*, 836 F.3d at 776. The heightened requirement also forces the plaintiff to do more than the usual investigation before filing a complaint. *In re Liburd-Chow*, 535 B.R. 863, 869 (Bankr. N.D. Ill. 2010). A court considering a motion to dismiss will assume as true and read in the light most favorable to the non-moving party all well-pleaded allegations. *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). A Seventh Circuit panel has held that so long as a trier of fact may reasonably infer proof that will be available at trial, dismissal is not the proper course of action. *Sidney S. Arst Co. v. Pipefitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994). A court need not determine whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). However, a "plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir.2010) (emphasis in original). A *pro forma* or "threadbare" set of recitals of a cause of action's elements in a complaint will not suffice. *Iqbal*, 556 U.S. at 678.

Plaintiff's cause of action for nondischargeability of the debt owed to him lies under 11 U.S.C. § 523(a)(2)(A). In relevant part, that provision states that:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>       (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition

Thus, in order to sustain a claim under § 523(a)(2)(A) a creditor must prove that, (1) debtor made a representation of fact that (2) he knew to be false or made with reckless disregard for its truth, (3) with an intent to deceive, (3) and that creditor justifiably relied on the false representation. *In re Scarlata*, 979 F.2d 521, 525 (7th Cir. 1992).

As Defendant has indicated, Plaintiff relies on five alleged instances of misrepresentation in his amended complaint. These include a January 5, 2012 email (Dkt. No. 13, Exh. C), a discussion between Defendant and Plaintiff on an unspecified date that she had sent him a check (Dkt. No. 13, ¶ 16), a letter on May 17, 2013 from Defendant to Plaintiff (Dkt. No. 13, Exh. D), a January 2, 2014 email from Defendant (Dkt. No. 13, Exh. G), and two emails on March 19, 2014 (Dkt. No. 13, Exhs. H & I). Plaintiff also alleges that at the time the parties entered into the engagement agreement on July 25, 2011, Defendant did not have the intent to ever pay him for his services (Dkt. No. 13, ¶ 8). However, even when taken altogether and considered in a light most favorable to Plaintiff, none of these factual allegations support Plaintiff's assertion of fraud on Defendant's part.

First, Plaintiff's assertion that Defendant never intended to pay him in full, even at the time the parties initially entered into the agreement, is contradicted by other allegations. While Fed. R. Civ. P. 9(b)'s heightened pleading requirement does not extend to states of mind, which may be plead generally, the complaint, "nevertheless 'must still afford a basis for believing that plaintiffs could prove scienter,'" *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (1990)). Plaintiff's Exhibit A and B to his Amended Complaint contradict his assertion that Defendant intended to defraud him from the onset. The Engagement Agreement, Exhibit A, indicates that Plaintiff would not perform any legal work until a $3500 retainer had been paid. Taken together with Exhibit B, a letter from Plaintiff requesting payment for legal services performed, it must be inferred that Plaintiff was paid at a minimum the agreed retainer amount. Furthermore, Exhibit B also states that Defendant had not paid "for the past two months." The letter was sent on January 3, 2012 and included services performed through December 2011, so presumably, Defendant had been paying her bills to Plaintiff through at least October 2011. Where exhibits attached to a complaint conflict with the pleading, the exhibits control. *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006). Thus, Plaintiff's assertion that Defendant never intended to pay

him in full is clearly incorrect, given that she put up a substantial retainer and paid his monthly bills through at least October 2011.

Plaintiff's assertion that the January 5, 2012 email (Dkt. No. 13, Exh. C) from Defendant to Plaintiff constitutes actionable promissory fraud is also incorrect. In that email, Defendant states that she is only receiving $500.00 per month in child support and has several critical expenses including food for her children and insurance. Moreover, Defendant merely states that she will "do her best" to pay Plaintiff something every month, offering the $50.00 per month figure as an amount she believes she would be able to pay. While courts have held promissory fraud is actionable pursuant to 11 U.S.C. § 523(a)(2)(A), that is only when a plaintiff can establish that the promise was part of a scheme to defraud. *In re Amari*, 483 B.R. 836, 849 (Bankr. N.D. Ill. 2012). However, in order to prove that a scheme to defraud exists, Plaintiff must show that there is a, "larger pattern of deceptions or enticements that reasonably induces reliance and against which the law out to provide a remedy." *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345, 1354 (7th Cir. 1995). Plaintiff has made no such showing. On the contrary, the weight of the details alleged, even taken in the light most favorable to Plaintiff, tend to show that Defendant was a debtor in a financially precarious situation attempting to make good on an agreement with Plaintiff. Plaintiff, despite receiving this email describing her difficulties, continued to rack up tens of thousands of dollars in fees for services he performed over the course of two more years for a client he knew to be in dire financial straits. That certainly does not indicate that Plaintiff justifiably relied upon any deceptions or inducements. Even assuming, *arguendo*, that Plaintiff had established a pattern of deceptions or enticements, this purported instance of promissory fraud is certainly not actionable as Defendant made no promise at all. She merely indicated that she would do her best to pay Plaintiff, and stated that until she started getting more money from her ex-husband, she would only be able to pay $50.00 per month. None of those statements indicate that Defendant unequivocally promised to pay Plaintiff that amount, and thus, cannot be the basis of actionable promissory fraud.

Second, the alleged discussion between Plaintiff and Defendant wherein Defendant indicated that a check had already been mailed to him is also not evidence of fraud. First, the allegation lacks particularity, as Plaintiff only indicates that the conversation took place sometime after May 17, 2013. Plaintiff does not explain when or how this conversation took place. Moreover, Plaintiff has not established that he justifiably relied on this statement, as is

required pursuant to 11 U.S.C. § 523(a)(2)(A). While "justifiable reliance" is a lower standard than "reasonable reliance," a plaintiff is still, "required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Field v. Mans*, 516 U.S. 59, 71 (1995). When it should be "apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own." *Id*. Plaintiff had already received an email on January 5, 2012, indicating that Defendant would have trouble paying him his total fees, and indeed stated that the best that she could offer him was $50.00 per month unless she started receiving more money from her ex-husband. Plaintiff did not even need to make a cursory examination or investigation of Defendant's claim that she had sent a check, given that he knew for a fact that the prospects of being paid for his services had become unlikely due to Defendant's financial situation. Despite this, Plaintiff asserts that he not only justifiably relied on this statement, but also relied on subsequent statements by Defendant, which he claims led him to accrue substantial additional fees for his services over the next two years. That is not the justifiable reliance that *Field v. Mans* contemplated. It seems evident that, at best, Plaintiff blindly relied upon a statement, which he knew to be vague and unlikely in order to continue accruing fees in a case that he was unwilling to withdraw from.

Likewise, the January 2, 2014 (Dkt. No. 13, Exh. F) email from Defendant to Plaintiff does not constitute evidence of fraud or of a scheme to defraud. This email was sent two years after Plaintiff initially contacted Defendant about her non-payment. Plaintiff has not alleged that he was paid in the interim, and in fact, asserts that he was lied to again when Defendant stated that she had sent him a check in the mail. During the two years between Defendant's January 5, 2012 email (or even the months between the alleged communication with regards to the non-existent check), Plaintiff continued to accrue fees amounting to a total amount due of over $32,000.00 (Dkt. No. 13, Exh. G). Again, by this point, Plaintiff was well aware of Defendant's precarious financial situation, he has not indicated that he had been paid anything over the preceding two year period, and yet he had continued to accrue substantial fees from a client he could not possibly have believe would pay him in full at a rate of $50.00 per month. Plaintiff has failed to establish that he could justifiably rely on this alleged misrepresentation as required by *Field v. Mans*.

The fourth and fifth instances of fraud alleged by Plaintiff, two emails dated March 19, 2014 (Dkt. No. 13, Exhs. H & I), also do not constitute evidence of fraud or of a scheme to defraud. Defendant repeats her assertion that she has no substantial income beyond the child support payments she receives from her ex-husband and states that she is doing the best she can to pay Plaintiff. Additionally, she indicated that if Plaintiff can no longer represent her, she would understand. For the same reasons articulated above, Plaintiff has not provided any reason as to why he could have possibly justifiably relied on these statements by Defendant given that he knew two years prior that she would, at best, have enormous difficulty in paying the amount she owed to Plaintiff. Despite these clear signs, Plaintiff continued to work on Defendant's case for two years, accruing enormous fees that he must have known she would not be able to pay.

## CONCLUSION

Plaintiff has failed to allege a single instance of fraud upon which he could have justifiably relied as required both by the Supreme Court decision in *Field v. Mans* and 11 U.S.C. § 523(a)(2)(A). Despite his knowledge of Defendant's finances and his experience as an attorney, he continued to work on his client's case for two years with poor prospects of being paid anything, let alone the $32,000.00 in work performed. His offer to file a motion to compel payment of the husband's child support gives some ground to believe the Plaintiff stayed on the case to get some payment from the husband.

Given the facts set forth in Plaintiff's Amended Complaint, and taking them in the light most favorable to Plaintiff, Plaintiff's adversary case must and will be dismissed. This being the second dismissal, it is with prejudice.

For the reasons articulated above, Defendant's Motion to Dismiss will be granted by separate order to follow and Plaintiff's Adversary Complaint will be dismissed with prejudice.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 7 day of March, 2018

Handler v. Nielsen
17 AP 00471

## CERTIFICATE OF SERVICE

I, Amartya Bagchi, certify that on March 7, 2018, I caused to be served copies of the foregoing document to the following by electronic service through the Court's CM/ECF system or regular U.S. mail:

*Amartya Bagchi*
Law Clerk

### Service by Electronic Service

**Joel F Handler**
Law Office of Joel F. Handler
ONE E. WACKER DRIVE
SUITE 510
Chicago, IL 60601
312-832-0008
312-477-2501 (fax)
jhandler@handlerlawgroup.com
*Plaintiff*

**Anamaria F Rivero**
Thomas T. Boundas & Associates
6428 Joliet Rd., Ste. 204
Countryside, IL 60525
(708) 497-9669
arivero.boundaslaw@gmail.com
*Counsel for Defendant*

**Patrick S Layng**
Office of the U.S. Trustee, Region 11
219 S Dearborn St
Room 873
Chicago, IL 60604
312-886-5785
USTPRegion11.ES.ECF@usdoj.gov
US Trustee